Eric P. Early, State Bar Number 166275
*eearly@earlysullivan.com*
Peter Scott, State Bar Number 247786
*pscott@earlysullivan.com*
EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for Plaintiff
FAIR EDUCATION SANTA BARBARA, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

FAIR EDUCATION SANTA BARBARA, INC., a 501(c)(3) organization,

Plaintiff,

vs.

SANTA BARBARA UNIFIED SCHOOL DISTRICT, a public school district; and JUST COMMUNITIES CENTRAL COAST, INC., a 501(c)(3) organization.

Defendants.

Case No.: 2:18-cv-10253

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**



## INTRODUCTION

### A. Protecting California's Citizens

1. Plaintiff Fair Education Santa Barbara ("Fair Education SB") brings this action to help ensure that the Santa Barbara Unified School District ("SBUSD") (and its school board) provide every student, irrespective of race, ethnicity, culture and sexual orientation, the opportunity to achieve his or her highest ability and potential.

### B. "Just Communities" Central Coast is Divisive and Discriminatory

2. This action is brought against the anti-Caucasian, anti-Christian organization calling itself, Just Communities Central Coast, Inc. ("JCCC"), and its willing enabler, SBUSD – two organizations that have had a veritable revolving door of employees working for each -- to obtain, among other relief, and without limitation, a declaratory judgment and an injunction under the Declaratory Judgment Act, 28 U.S.C. § 2201. JCCC and SBUSD are sometimes collectively referred to herein as "Defendants".

3. Defendants have employed and continue to employ policies and procedures (for teaching SBUSD's teachers and students) that unlawfully discriminate on the basis of race, ethnicity, sex and religion. As but one of many examples, the following chart is ***copied directly*** from JCCC's materials and speaks for itself:



EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW
244485.1

Forms of Oppression

| Form of Oppression | Privilege Group | Target Group |
|---|---|---|
| Sexism | Men | Women |
| Racism | White People | People of Color |
| Heterosexism | Heterosexual People | LGBQ People |
| Genderism | Traditionally gendered people | Transgender and Genderqueer People |
| Classism | Wealthy People | Working Class & Poor |
| Ableism | Generic / "Abled" | People living with Disabilities |
| Ageism | Adults, 18-65 years old | Youth & Elders |
| Religious Oppression | Christian People | All others |

(Exh. B, p. 15.)

**C. <u>Just Communities' "Unconscious Bias" Training Violates Federal and State Law</u>**

4. Under the guise of promoting so-called "unconscious bias" and "inclusivity" instruction, JCCC's actual curriculum and practices are overtly and intentionally anti-Caucasian, anti-male, and anti-Christian. SBUSD has whole heartedly supported and promoted JCCC's discriminatory program and has paid JCCC more than $1,000,000 since 2013 alone, and on September 11, 2018, considered contracting with JCCC for additional 4 years at a cost to the taxpayers of more than $1.7 million. On October 9, 2018, SBUSD renewed its contract with JCCC for another year at a cost to the taxpayers of nearly $300,000.

5. California Public Contracts Code § 20111 requires SBUSD to follow California's mandated competitive billing procedures and put its "unconscious bias training" out for public bidding. SBUSD has failed to do so rendering its contract with JCCC void as a matter of law. There are scores of entities and individuals that provide "unconscious bias training," and other forms of training for reducing the

achievement gap, such as the Santa Barbara Pathways Program, run by the University of California, Santa Barbara, as well as numerous online courses. But unlike JCCC, they do not single out Caucasians and Christians as the cause of the ills purportedly suffered by all others.

6. SBUSD's Board Policy No. 3600 requires SBUSD to obtain a conflict of interest statement regarding the relationships between JCCC and SBUSD. SBUSD has failed to do so. Fair Education SB is informed and believes, and based thereon alleges, that at least 7 individuals, including present SBUSD Board member Ismael Paredes Ulloa, and present Assistant Superintendent of Secondary Education Shawn Carey, have been employed at one time or another by both entities and/or its major donors. These conflicts of interest help explain SBUSD's apparent zeal to contract with JCCC.

7. Defendants, recipients of federal funds, are also in violation of the United States Constitution as they discriminate on the basis of their race in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* by intentionally supporting, promoting and implementing JCCC's programming in SBUSD's schools with knowledge of its racially discriminatory content and application, which has created a racially hostile educational environment for many teachers and students.

**c. Relief Requested**

8. Fair Education SB respectfully requests that the Court find that SBUSD and JCCC are in violation of the United States Constitution, 42 U.S.C. § 2000d, *et seq.*, 42 U.S.C. § 1983, California Government Code § 11135, California Education Code § 220, California Education Code § 60044 and California Public Contracts Code § 20111 and now declare as void, and terminate, JCCC's current contract with SBUSD.

## JURISDICTION AND VENUE

9. This action arises under 42 U.S.C. § 2000d, *et seq.* and 42 U.S.C. § 1983. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

10. Venue is proper in the Central District of California under 28 U.S.C. § 1391 because the events giving rise to the claims detailed herein occurred in the Central District of California.

## THE PARTIES

### A. Plaintiff

11. Plaintiff, Fair Education Santa Barbara is an Internal Revenue Code Section 501(c)(3) organization formed to advocate for fair education policies in the Santa Barbara Unified School District and in Santa Barbara County that benefit all Americans educated in the Santa Barbara Unified School District through, among other methods, lobbying, grass roots organizing, community outreach, legal actions and education.

12. Fair Education Santa Barbara is a coalition of concerned parents of students in the Santa Barbara Unified School District, all of whom are residents and tax payers within Santa Barbara County. Members of Fair Education Santa Barbara are assessed for, liable to pay, and have paid real property taxes and assessments on property located within the Santa Barbara Unified School District's boundaries within one year before commencement of this action. Members of Fair Education Santa Barbara include SBUSD taxpayers and parents of current minor students in the SBUSD system that identify as Caucasian, Christian and/or male.

### B. Defendants

13. Defendant Santa Barbara Unified School District is a public-school district located in Santa Barbara County, California, organized and existing under the laws of the State of California. As a public educational institution and recipient of federal and state funds, SBUSD has a duty to enforce the United States Constitution and California Constitution by not enacting, imposing, operating, or

maintaining policies, operations, or goals that discriminate against or grant preferential or detrimental treatment to any individual or group on the basis of race, sex, color, religion, ethnicity or national origin.

14. SBUSD receives and benefits from federal and state financial assistance, as well as taxes and assessments paid by the members of Fair Communities SB. SBUSD has utilized and expended public monies in violation of the United States Constitution and California Constitution. So long as Defendants continue to implement, enforce, and maintain their discriminatory policies, procedures and curriculum, they will continue to expend public funds in violation of the aforementioned Federal and State Constitutional provisions.

15. Defendant Just Communities Central Coast is an Internal Revenue Code Section 501(c)(3) organization. From its website, JCCC purports to "work to ensure that Central Coast schools, organizations and communities are places of opportunity, not places of limitations" and to "bring together community members and empower them to be leaders who promote equity around issues of race, socio-economic class, sexual orientation, [and] gender." JCCC's self-serving statements to the contrary, its program materials and program methodology promote the opposite. JCCC has contracted with the SBUSD to provide educational programs to the SBUSD teachers and students that engage in impermissible discrimination on the basis of race, sex, ethnicity and religion.

16. All named Defendants are persons acting under color of state law within the meaning of 42 U.S.C. § 1983.

**FACTUAL BACKGROUND**

17. Fair Education SB is informed and believes, and based thereon alleges, that for the past several years, SBUSD has engaged JCCC to provide training and educational programs to SBUSD staff and students with respect to "diversity, inclusion, and equity." JCCC's programs consist of several workshops and training sessions provided to SBUSD staff and students throughout the year.

18. SBUSD funds JCCC's programming through state and federal funds earmarked in its Local Control Accountability Plan ("LCAP"). LCAP funds can be used by the district for many purposes, including for example, music, dance, theater and visual arts training for foster care, low-income and English learner children.[1] To date, SBUSD has paid JCCC well-over $1,000,000 to provide its programs to SBUSD staff and students. On or about October 9, 2018, for the 2018-2019 school year, SBUSD entered into a renewed contract with JCCC (the "2018 JCCC Contract") to again provide its so-called "diversity, inclusion and equity" programs for a total cost to the tax payers of at least $294,000 for the school year. A true and correct copy of the JCCC Contract that was approved by SBUSD is attached hereto as Exhibit A.

a. **JCCC's Racially and Religiously Divisive Agenda**

19. While JCCC purports to provide "diversity, inclusion and equity" programs, its actual curriculum and programs are anything but. JCCC's actual programming is a radical, exclusionary and discriminatory curriculum, masquerading under the guise of "advancing justice" and making communities "more inclusive and just for all people." JCCC's curriculum and written materials attempt to indoctrinate staff and students with a warped view of the world where racism can only be perpetrated by "white people" and where the success of students in so-called "privileged" groups is due solely to their "unearned access to resources . . ."

---

[1] As explained for example, in "A Parent's Guide to School Funding – Learning the Fundamentals About LCFF and LCAP", arts education boosts literacy, math skills, and ELA for English Language Learners, who are more likely to pursue a college degree if they attend an arts-enriched high school. Arts education is also linked to improved state test scores among low income students. https://www.familiesinschools.org/wp-content/uploads/2016/05/Parents-Guide-to-School-Funding-LCFF.pdf.

20. True and correct copies of JCCC's materials, that were able to be obtained by a parent who attended some of JCCC's courses, are attached hereto as Exhibit B. These documents ***are exactly*** in the form obtained from JCCC. Nevertheless, JCCC has engaged in an ongoing effort to obfuscate and confuse the public to try to divert attention from JCCC's racist and divisive materials, by asserting that some of its materials have purportedly been altered. Making matters worse, JCCC (and SBUSD) have ignored repeated demands to put the issue of alleged altered documents to rest, by repeatedly refusing (despite multiple demands therefore), to post JCCC's materials on the district's or another publicly available website, to allow all the citizens of Santa Barbara to see JCCC's agenda for themselves.

21. JCCC's materials contain the following direct quotes, among many others:

a. "Privileged Groups" include "Men," "White People," "Christian People," and "Wealthy People," and "Target Groups" include "Women," "People of Color," and "Working Class & Poor." (Exh. B, p. 15.)

b. "Racism" is "[a] system of oppression based on race that privileges white people and targets people of color." (Exh. B, p. 17.)

c. "Privilege" is "[u]nearned access to resources that enhance one's chances of getting what one needs or influencing others in order to lead a safe, productive and fulfilling life." (Exh. B, p. 19.)

d. JCCC's materials define "Religious Oppression" as "Christian People" targeting "All Others" and "Sexism" as "Men" targeting "Women." (Exh. B, p. 15.)



22. Utilizing this ideological framework, during the actual workshops and training sessions, JCCC physically separates participants into different racial groups, requiring all individuals that JCCC ***perceives*** to be "white" to be segregated in a separate room to receive instruction that differs from all perceived "non-white" participants.

23. In these racially segregated sessions, the "white" participants are instructed that, whether they are conscious of it or not, all "white people" are racist and collude to promote or perpetuate racism against non-whites. JCCC's program administrator, Jarrod Schwartz, admitted that JCCC splits its participants into separate racial groups to receive differing instruction in a recent interview with KCRW Santa Barbara, which can be found at: https://kcrw.co/2R0a0s8.

24. JCCC's written curriculum further states that "public schools teach 'skills' that business owners find useful like competition, obedience and respect for authority," and that "public schools create the illusion that everyone has an equal chance" and that "wealthy people and business shaped the schools to contain and control poor people." (Exh. B, pp. 87-88.)

25. Past participants in JCCC's programs for SBUSD have reported that, if any dissent or argument is expressed concerning JCCC's instruction, the dissenter is labeled as a racist. This has led to a situation where JCCC and SBUSD have effectively silenced any dissent to JCCC's indoctrination for fear of being publicly branded a "racist" or an "oppressor."

26. Fair Education SB is informed and believes, and based thereon alleges, that the purportedly successful results JCCC and SBUSD tout about their impact on the district's students, have neither been properly or correctly analyzed or vetted and, amount to nothing more than the self-serving and self-created statements of these two entities that are intent on doing and saying whatever is necessary to continue their incestuous (and to JCCC – very profitable) relationship.



EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP
ATTORNEYS AT LAW
244485.1

27. The negative effects of JCCC's programming are reverberating within SBUSD and creating a hostile educational environment for teachers and students that fall within a so-called "Privileged Group" as per JCCC's materials. Anti-white graffiti has appeared within SBUSD schools. Anti-white racial epithets have been hurled at SBUSD teachers and students. Anti-white slogans have recently defaced the Mission Santa Barbara.

**b. <u>The SBUSD's School Board Contracts with JCCC</u>**

28. On September 11, 2018, SBUSD's Board considered entering into a four-year Memorandum of Understanding with JCCC for its programming at a cost of $1,737,910. (Ex. C [JCCC Proposed MOU].)

29. At the September 11th meeting, JCCC's proposal was challenged by a group of concerned teachers and parents within SBUSD. Concerns were expressed regarding JCCC's discriminatory programming, the failure of the proposed JCCC MOU to adhere to district contracting standards, numerous conflicts of interest between JCCC and the SBUSD School Board, and the failure of SBUSD to open the contract for public bidding as required by California Public Contracts Code § 20111. As a result of this initial challenge, SBUSD tabled approval of the proposed JCCC MOU until October of 2018.

30. At the October 9, 2018 SBUSD School Board meeting, the group of concerned teachers and parents requested among other things:

a. That the School Board publish JCCC's written materials on the Board's website so that all of Santa Barbara's citizens could see for themselves exactly what JCCC is teaching their teachers and students. SBUSD Assistant Superintendent of Secondary Education Shawn Carey – a former instructor at JCCC -- told the Board that JCCC's materials *should not* be published. The Board did not publish the materials.

b. That the School Board submit the district's "unconscious bias training" program for public bidding. The Board refused.

31. Instead, a revised, one-year contract with JCCC for an aggregate cost of $294,000 was proposed and approved. (See Ex. A [JCCC Contract].)

32. JCCC is scheduled to give its next instructional program to SBUSD under the JCCC Contract on March 11-15, 2019.

**COUNT I**

**Violation of 42 U.S.C. § 2000d *et seq.***

**(Intentional Discrimination On The Basis Of Race Against SBUSD and JCCC)**

33. Plaintiff incorporates the allegations and averments contained in paragraphs 1 through 32 as if fully set forth herein.

34. SBUSD and JCCC, recipients of federal funds, intentionally discriminated against certain of Plaintiff's members and/or their minor children students on the basis of their race in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.* by intentionally supporting, promoting and implementing JCCC's programming in SBUSD's schools with knowledge of its racially discriminatory content and application, which has created a racially hostile educational environment for teachers and students who are Caucasian.

35. Title VI is privately enforceable.

36. Discrimination that violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution constitutes a violation of Title VI when committed by any institution, entity or person that accepts federal funds.

37. Plaintiff's members have been and will continue to be injured due to SBUSD and JCCC's unlawful and discriminatory actions.

38. Plaintiff is entitled to a declaratory judgment, pursuant to 28 U.S.C. § 2201, and a permanent injunction because there is no plain, adequate or speedy remedy at law to prevent Defendants from continuing to practice and promote the aforementioned actions that discriminate on the basis of race or ethnicity in violation of Title VI of the Civil Rights Act of 1964 and because the harm Plaintiff's members will otherwise continue to suffer is irreparable.

**COUNT II**

**Violation of 42 U.S.C. § 1983**

**(Intentional Discrimination On The Basis Of Race, Ethnicity, Religion And Sex Against SBUSD and JCCC)**

39. Plaintiff incorporates the allegations and averments contained in paragraphs 1 through 38 as if fully set forth herein.

40. Defendants SBUSD and JCCC are persons acting under color of state law within the meaning of 42 U.S.C. § 1983.

41. SBUSD and JCCC intentionally discriminated against certain of Plaintiff's members and/or their minor children students on the basis of their race, ethnicity, religion and/or sex by intentionally supporting, promoting and implementing JCCC's programming in SBUSD's schools with knowledge of its discriminatory content and application, which has created a hostile educational environment for teachers and students who are Caucasian, Christian and/or Male.

42. Plaintiff's members have been and will continue to be injured due to SBUSD and JCCC's unlawful and discriminatory actions.

43. Plaintiff is entitled to a declaratory judgment that Defendants' conduct is in violation of 42 U.S.C. § 1983 and the United States Constitution and a permanent injunction because there is no plain, adequate or speedy remedy at law to prevent Defendants from continuing to practice and promote the aforementioned discriminatory actions and because the harm Plaintiff's members will otherwise continue to suffer is irreparable.



**COUNT III**

**Violation of California Government Code § 11135**

**(Intentional Discrimination On The Basis Of Race, Ethnicity, Religion And Sex Against SBUSD and JCCC)**

44. Plaintiff incorporates the allegations and averments contained in paragraphs 1 through 43 as if fully set forth herein.

45. California Government Code § 11135 prohibits discrimination and/or denial of the full and equal access to the benefits of any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state on the basis of sex, race, color, religion, ancestry, national origin, or ethnic group identification, among other things.

46. Defendants SBUSD and JCCC receive state funding.

47. SBUSD and JCCC intentionally discriminated against certain of Plaintiff's members and/or their minor children students on the basis of their race, ethnicity, religion and/or sex by intentionally supporting, promoting and implementing JCCC's programming in SBUSD's schools with knowledge of its discriminatory content and application, which has created a hostile educational environment for teachers and students who are Caucasian, Christian and/or Male.

48. Defendants SBUSD and JCCC have violated Plaintiff's rights under California Government Code § 11135 and its implementing regulations.

49. Plaintiff's members have been and will continue to be injured due to SBUSD and JCCC's unlawful and discriminatory actions.

///

///

///

///

///

50. Plaintiff is entitled to a declaratory judgment that Defendants' conduct is in violation of California Government Code § 11135 and a permanent injunction because there is no plain, adequate or speedy remedy at law to prevent Defendants from continuing to practice and promote the aforementioned discriminatory actions and because the harm Plaintiff's members will otherwise continue to suffer is irreparable.

**COUNT IV**

**Violation of California Education Code § 220**

**(Intentional Discrimination On The Basis Of Race, Ethnicity, Religion And Sex Against SBUSD and JCCC)**

51. Plaintiff incorporates the allegations and averments contained in paragraphs 1 through 50 as if fully set forth herein.

52. California Education Code § 220 prohibits discrimination on the basis of gender, nationality, race or ethnicity, and religion, among other things, in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance, or enrolls pupils who receive state student financial aid.

53. Defendants SBUSD and JCCC receive and/or benefit from state financial assistance and are, thus, subject to California Education Code § 220.

54. SBUSD and JCCC intentionally discriminated against certain of Plaintiff's members and/or their minor children students on the basis of their race, ethnicity, religion and/or gender by intentionally supporting, promoting and implementing JCCC's programming in SBUSD's schools with knowledge of its discriminatory content and application, which has created a hostile educational environment for teachers and students who are Caucasian, Christian and/or Male.

55. Defendants SBUSD and JCCC have violated Plaintiff's rights under California Education Code § 220 and its implementing regulations.



56. Plaintiff's members have been and will continue to be injured due to SBUSD and JCCC's unlawful and discriminatory actions.

57. Plaintiff is entitled to a declaratory judgment that Defendants' conduct is in violation of California Education Code § 220 and a permanent injunction because there is no plain, adequate or speedy remedy at law to prevent Defendants from continuing to practice and promote the aforementioned discriminatory actions and because the harm Plaintiff's members will otherwise continue to suffer is irreparable.

**COUNT V**

**Violation of California Education Code § 60044**

**(Against SBUSD)**

58. Plaintiff incorporates by reference paragraphs 1 through 57 as though set forth in full.

59. California Education Code § 60044 prohibits a governing school board from adopting any instructional materials for use in the schools that contain any matter reflecting adversely upon persons on the basis of race or ethnicity, gender, religion or other characteristic listed in California Education Code § 220.

60. SBUSD's adoption of JCCC's discriminatory programs and curriculum is violative of California Education Code § 60044 because these materials reflect adversely on certain of Plaintiff's members on the basis of their race or ethnicity, gender and/or religion.

61. Plaintiff's members have been and will continue to be injured due to SBUSD, adoption of JCCC's improper educational curriculum and materials.

///

///

///

///

///

62. Plaintiff is entitled to a declaratory judgment that SBUSD's conduct is in violation of California Education Code § 60044 and a permanent injunction because there is no plain, adequate or speedy remedy at law to prevent SBUSD from continuing to adopt and promote these improper instructional materials and because the harm Plaintiff's members will otherwise continue to suffer is irreparable.

**COUNT VI**

**Violation of California Public Contract Code § 20111**

**(Against SBUSD And JCCC)**

63. Plaintiff incorporates by reference paragraphs 1 through 62 as though set forth in full.

64. California Public Contract Code § 20111 requires, in pertinent part, that:

> The governing board of any school district, in accordance with any requirement established by that governing board pursuant to subdivision (a) of Section 2000, shall let any contracts involving an expenditure of more than fifty thousand dollars ($50,000) for any of the following: […] (B) Services, except construction services. …

65. California's laws requiring competitive bidding for government contracts "are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption, and to secure the best work or supplies at the lowest price practicable … and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest." *Domar Electric, Inc. v. City of Los Angeles*, 9 Cal. 4th 161, 173 (1994).

66. SBUSD has contracted with JCCC for JCCC to provide educational and training services to SBUSD teachers and students for the next year pursuant to the JCCC Contract at a cost of $294,430.

67. The JCCC Contract is not a contract for professional services or advice, insurance services, or any other purchase or service otherwise exempt from the provisions of California Public Contracts Code § 20111. The JCCC Contract is also not a contract for special services under California Government Code § 53060.

68. Accordingly, the SBUSD and SBUSD School Board were required to comply with the provisions of California Public Contracts Code § 20111, *et seq.* and to seek public bidding prior to accepting and executing the JCCC Contract.

69. However, neither the SBUSD nor the SBUSD School Board let this proposed contract for public bidding as required by California Public Contracts Code § 20111. Instead, it was unanimously approved, and rubber stamped by the SBUSD School Board and SBUSD administration without any serious negotiation or investigation into other viable alternative programs.

70. These actions are particularly concerning given the numerous real and potential conflicts of interest between JCCC and the SBUSD and SBUSD School Board. Plaintiff, through its own research, has discovered and alleges upon information and belief the following actual or potential conflicts of interest to date (and there are likely more):

a. Current SBUSD School Board member, Ismael Ulloa, who voted to approve the JCCC Contract, was a paid teacher for JCCC in 2016;

b. Annette Cordero was a two-term member of the SBUSD School Board, serving from 2004 through 2012 and is currently a member of JCCC's Board of Directors;

c. Dave Cash was the superintendent of SBUSD from 2011 through 2016 and approved numerous of JCCC's prior contracts with the district. Dr. Cash is currently a member of JCCC's Board of Directors.



d. Monique Limon was a SBUSD School Board member from 2014 through 2017 and among other things, currently sits on the Grant Review Committee of the McCune Foundation, which is a major source of funding for JCCC;

e. Pedro Paz was a SBUSD School Board member from 2012 through 2016 (ending his tenure as Vice President) and is the current head of the Fund For Santa Barbara, which is another major contributor to JCCC;

f. Current SBUSD Assistant Superintendent of Secondary Education, Shawn Carey, was an instructor for JCCC and a major promoter of JCCC within the district;

g. Current SBUSD administrative assistant, Alma Flores, was a paid teacher for JCCC and currently sits on JCCC's Board of Directors;

h. Current SBUSD Director of English Learners and Parent Engagement, Maria Larios-Horton, was on JCCC's Board of Directors as recently as 2017.

71. Moreover, SBUSD violated its own written Board Policy No. 3600 and failed and refused to obtain a written conflict of interest statement from JCCC prior to considering and approving the JCCC Contract.

72. SBUSD has violated California Public Contract Code § 20111 and the JCCC Contract must be declared void and the district's "unconscious bias training" must be submitted by the SBUSD and SBUSD School Board for public bidding.

///

///

///

///

///

///

## PRAYER FOR RELIEF

WHEREFORE, Fair Education Santa Barbara respectfully prays for the following relief as to all counts:

1. A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, from the Court that Defendants SBUSD and JCCC's above-described actions violate Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*;

2. A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, from the Court that Defendants SBUSD and JCCC's above-described actions violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983;

3. A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, from the Court that Defendants SBUSD and JCCC's above-described actions violate California Government Code § 11135;

4. A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, from the Court that Defendants SBUSD and JCCC's above-described actions violate California Education Code § 220;

5. A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, from the Court that Defendant SBUSD's above-described actions violate California Education Code § 60044;

6. A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, from the Court that Defendant SBUSD's failure to allow public bidding on the matter ultimately awarded to JCCC pursuant to the JCCC Contract violates California Public Contracts Code § 20111 and that the JCCC Contracts is automatically void and terminated.

7. A preliminary and permanent injunction preventing Defendants SBUSD and JCCC from carrying out the terms of the JCCC Contract and from allowing JCCC to conduct its educational programs pursuant to the JCCC Contract and requiring SBUSD to submit the "unconscious bias training" for public bidding.

8. An award of attorney's fees and costs to Fair Education Santa Barbara; and

9. Such other and further relief as the Court may deem just and proper.

Dated: December 10, 2018

EARLY SULLIVAN WRIGHT GIZER & McRAE LLP

By: /s/ Eric P. Early
Eric P. Early
Attorneys for Plaintiff
FAIR EDUCATION SANTA BARBARA, INC.

**JURY REQUEST/DEMAND**

Plaintiff requests a trial by jury on all issues so triable.

Dated: December 10, 2018

EARLY SULLIVAN WRIGHT GIZER & McRAE LLP

By: /s/ Eric P. Early
Eric P. Early
Attorneys for Plaintiff
FAIR EDUCATION SANTA BARBARA, INC.